## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROGER BUEHL,

      Plaintiff,

      v.

WEXFORD HEALTH SOURCES,
INC., et al.,

      Defendants.

CIVIL ACTION NO. 3:16-cv-00822

(CAPUTO, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

This is a prisoner civil rights action brought under 42 U.S.C. § 1983 for violation of his rights under the Eighth Amendment of the United States Constitution. The plaintiff, Roger Buehl, is represented by counsel. Buehl is an inmate within the Pennsylvania Department of Corrections since 1983. (Doc. 1-1 ¶ 10). He initiated this action in the Court of Common Pleas of Schuylkill County on August 19, 2014. After the filing of a second amended complaint in that court, the action was removed to this court on May 9, 2016. (Doc. 1). Thereafter, on May 11, 2016, the defendants Wexford Health Sources, Inc., Correct Care Solution, LLC, Adrian Harewood, M.D., medical director SCI-Frackville, Haresh Pandya, M.D. a medical director at SCI-Frackville (the "medical defendants") filed

a motion to dismiss for failure to state a claim. (Doc. 3). On May 12, 2016, the defendants, Mary Alice Kuras, R.N., supervisor at SCI-Frackville, Vicki Stanishefski, R.N., the healthcare administrator at SCI-Frackville, and Christopher Oppman, the director of the Bureau of Healthcare Services for the DOC (the "corrections defendants"), filed a motion to dismiss for failure to state a claim. (Doc. 5). Both motions are before us for disposition. For the reasons set forth herein, we recommend that the motions be granted in part and denied in part, that the plaintiff's federal civil rights claim be dismissed for failure to state a claim, and his state-law claims be remanded to state court for further proceedings.

## I.   FACTUAL BACKGROUND

For purposes of resolution of both motions to dismiss, all of the facts are taken from Buehl's second amended complaint (Doc. 1-1). Buehl has been an inmate under the care, custody, and control of the Pennsylvania Department of Corrections since 1983. Healthcare staff at SCI Smithfield, SCI Mahoney, and SCI Frackville has been responsible for Buehl's healthcare. Buehl began experiencing pain, and losses of both strength and range of motion in his right shoulder prior to 2009. In 2009, Buehl was diagnosed with having right shoulder rotator cuff tendinitis and DOC

healthcare staff began providing him with ibuprofen and both oral and injected steroids. After a hospitalization for renal function in late 2009, it was determined that Buehl's loss of renal function was due to long-term ibuprofen and other non-steroidal anti-inflammatory medicines. After the exploration of alternative medications, by mid-2011, DOC healthcare staff was providing Buehl with Neurontin, both oral and injected steroids, and low-dose ibuprofen. Buehl began experiencing an increase in the severity of pain and greater losses of strength and range of motion in his right shoulder. In March 2012, an x-ray of his shoulder caused the healthcare staff to diagnose Buehl with glenohumeral degenerative joint disease.

In late 2012 or early 2013, the healthcare staff began providing Buehl with tramadol, a non-narcotic opiate, along with Nurontin, oral and injected steroids, and low dose ibuprofen to treat his shoulder pain and related symptoms. Another x-ray taken on July 26, 2013, confirmed Buehl's right shoulder moderate degenerative joint disease diagnosis. By early 2014, DOC healthcare staff changed Buehl's medications, and prescribed Tylenol with Codeine No. 3 instead of tramadol. For a period of time, Buehl was prescribed hydrocodone rather than tramadol, and then, at Buehl's request, he was provided tramadol again.

Sometime in 2013, Oppman in his capacity as director of the Bureau of Healthcare Services, approved and implemented clinical practice or pharmaceutical guidelines which effectively curtailed the authority of healthcare staff to exercise their independent professional judgment in prescribing pain medications for inmates, thereby minimizing individual assessment of any particular inmate's needs. As a result of Oppman's guidelines, Buehl's prescriptions for tramadol and Nurontin were terminated. The clinical guidelines approved by Oppman as applied to Buehl allegedly precluded healthcare staff from providing medications consistent with the community standards of care to effectively manage his shoulder pain which caused him to suffer needless pain and agony and permanent kidney and liver damage.

On April 14, 2014, Buehl was transferred from SCI Mahanoy to SCI Frackville. His first interaction with defendant Dr. Harewood was "[b]eginning in May 2014" when Buehl began to repeatedly ask defendant Dr. Harewood to prescribe tramadol, as recommended by the orthopedist, or any other more effective medicine, to treat his shoulder pain. (Doc. 41 ¶ 47). Yet, defendant Dr. Harewood would not and did not provide Buehl with any medicine stronger than ibuprofen.

On June 5, 2014, defendant Dr. Harewood saw Buehl who continued to complain of shoulder pain and requested "Tramadol (Ultram) for pain." Defendant Dr. Harewood planned to have Buehl followup with the orthopedic department, to continue his current medications, and noted that there was "[n]o need for narcotic medications."(Doc. 1-1 ¶ 49).

On June 13, 2014, Dr. Martin performed an orthopedic evaluation of Buehl at Sun Orthopedic Lewisburg and noted that Buehl "has pretty significant glenohumeral arthritis." (Doc. 1-1 ¶ 50). Dr. Martin also noted that although a shoulder replacement would be the definitive treatment for late stage glenohumeral osteoarthritis for an appropriate candidate, Buehl was not an ideal candidate. (Doc. 1-1 ¶ 51). Dr. Martin also stated that Buehl would be better treated with tramadol and that he has an appropriate diagnosis that would [w]arrant this level of pain medicine." (Doc. 1-1 ¶ 51).

On July 1, 2014, even though Dr. Martin said that Buehl "would be better treated with Tramadol," Dr. Harewood denied such medication and planned to continue Buehl's ineffective medication of Motrin as needed and to also treat his pain with "Prednisone (steroid) 60 mg daily for 5 days."(Doc. 1-1 ¶ 52). When Buehl pointed out that ibuprofen had caused

renal insufficiency problems in the past, and that his renal function should be monitored by diagnostic testing, defendant Dr. Harewood terminated all medications and treatment. (Doc. 1-1 ¶ 53).

On July 10, 2014, defendant Dr. Harewood saw Buehl who again requested Ultram for his shoulder pain. (Doc. 1-1 ¶ 54). Buehl was once more denied Ultram; instead, as noted in Dr. Harewood's progress note plan, Buehl was told to "take over the counter pain medications as needed" and "[r]ecommended exercise and strengthening." (Doc. 1-1 ¶ 54).

Beginning in September 2014, Buehl repeatedly asked defendant Dr. Pandya to prescribe tramadol, as recommended by the orthopedist, or any other more effective medicine to treat his shoulder pain. (Doc. 1-1 ¶ 55). Buehl informed defendant Dr. Pandya that the medicines provided were not helpful in managing his pain. Yet, defendant Dr. Pandya did not provide anything to treat Buehl's pain, other than ibuprofen or acetaminophen. (Doc. 1-1 ¶ 55).

After nearly ten months of repetitively being prescribed the ineffective medication Motrin, on December 2, 2014, labs were taken which revealed that Buehl had "decreased kidney function probably related to his prolonged use of Motrin." (Doc. 1-1 ¶ 57). The labs specifically revealed

that Buehl had "[i]ncreased BUN (blood urea nitrogen) and serum Creatinine " as well as "[d]ecreased GFR (glomerular filtration rate)." (Doc. 1-1 ¶ 57). On December 30, 2014, additional labs were conducted which revealed Buehl had "[i]ncreased BUN, serum Creatinine and decreased GFR." (Doc. 1-1 ¶ 58).

On January 9, 2015, defendant Dr. Pandya again examined Buehl, at which time Buehl again requested effective treatment for his shoulder pain and gave defendant Dr. Pandya a copy of the orthopedist reports. (Doc. 1-1 ¶ 59). Defendant Dr. Pandya read the record and confirmed the presence of those records in Buehl's medical file. Defendant Dr. Pandya then informed Buehl that the orthopedist recommendations were appropriate, but that approved clinical guidelines precluded him from prescribing tramadol or any similar medicine to treat Buehl's pain. (Doc. 1-1 ¶ 59). Defendant Dr. Pandya once again prescribed ibuprofen and acetaminophen. (Doc. 1-1 ¶ 59).

The results of each diagnostic blood lab testing conducted in December and requested by defendant Dr. Pandya indicated abnormal creatinine, BUN, and eGFR levels suggesting continued loss of renal function. Dr. Pandya examined Buehl on January 9, 2015. Dr. Pandya

once again provided Buehl with ibuprofen and acetaminophen on a long term basis. (Doc. 1-1 ¶ 60).

## II.   PROCEDURAL HISTORY

Buehl commenced this action on August 19, 2014, by filing a writ of summons in the Court of Common Pleas of Schuylkill County, Pennsylvania. On June 9, 2015, he filed his original *pro se* complaint in response to a rule to file complaint. On September 2, 2015, Buehl filed a *pro se* certificate of merit with respect to his medical negligence claims, together with a licensed medical doctor's written statement in support, as required by Rule 1042.3 of the Pennsylvania Rules of Civil Procedure. On November 16, 2015, he filed a *pro se* amended complaint. On February 18, 2016, the state common pleas court overruled the defendants' several preliminary objections to the amended complaint.

On March 21, 2016, counsel of record entered his appearance on behalf of Buehl in the state trial court and immediately moved for leave to file a second amended complaint. On April 19, 2016, Buehl's second amended complaint was filed pursuant to a stipulation by the parties and with leave of the state court. Buehl's second amended complaint consists of five counts: Count I asserts a violation of the Eighth Amendment against

defendants Oppman, Harewood, Pandya, Stanishefski, and Kuras; Count II asserts a medical negligence claim against Harewood, Pandya, Stanishefski and Kuras; Count III asserts a simple negligence claim against Oppman; Count IV asserts a violation of Article I, § 13 of the Pennsylvania Constitution against Oppman; and Count V asserts a violation of Article I, § 13 of the Pennsylvania Constitution against Harewood, Pandya, Stanishefski, and Kuras. On May 9, 2016, this matter was removed to this court. (Doc. 1).

The medical defendants have moved for partial dismissal of the second amended complaint for failure to state a claim. (Doc. 3). They argue that Count V should be dismissed because Pennsylvania law does not recognize a private cause of action for damages under the Pennsylvania Constitution, and Counts I and V should be dismissed because they are barred by the applicable statutes of limitations. (Doc. 4). The plaintiff has filed a brief in opposition. (Doc. 7).

The corrections defendants have moved to dismiss the second amended complaint in its entirety. (Doc. 5). They argue that Counts I, IV, and V should be dismissed for failure to state a claim because the second amended complaint fails to allege sufficient facts to state a deliberate

indifference claim against any of the corrections defendants, because it fails to allege sufficient facts to state a supervisory liability claim against Oppman, and because the corrections defendants are entitled to qualified immunity from suit. They further argue that this Court should decline to exercise supplemental jurisdiction over any surviving state-law claims. (Doc. 6). The plaintiff has filed a brief in opposition (Doc. 8), and the corrections defendants have filed a reply brief (Doc. 9).

## III.   LEGAL STANDARDS

### A. Rule 12(b)(6) Dismissal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences,

or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### B. *Sua Sponte* Dismissal Standard

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions concerning prison conditions. *See* 42 U.S.C. § 1997e(c)(1). *See generally Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards). "The court's obligation to dismiss a complaint under [these] screening provisions is not excused even after defendants have filed a motion to dismiss." *Id.* at 589. In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588.

## IV.   DISCUSSION

### A. Count I: Section 1983 Claims

The plaintiff has asserted federal civil rights claims against the

defendants under 42 U.S.C. § 1983. Section 1983 provides a private cause of action with respect to the violation of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

Count I of the second amended complaint alleges that the defendants were deliberately indifferent to the plaintiff's serious medical needs, depriving him of his Eighth Amendment right to be free from cruel and unusual punishment.

## 1. Statute of Limitations

The medical defendants have moved for dismissal on the ground that Buehl's federal civil rights claims asserted against them in Count I are barred by the applicable statute of limitations.[1] The corrections defendants have not joined the medical defendants in asserting this affirmative defense in their dismissal motion.

The applicable statute of limitations for federal civil rights claims brought under 42 U.S.C. § 1983 is borrowed from Pennsylvania's two-year statute of limitations applicable to personal injury actions. *See Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78–79 (3d Cir. 1989); *see also* 42 Pa. Cons. Stat. Ann. § 5524. Because the second amended complaint was filed in state court, Pennsylvania's relation-back rules apply. *See Valentine v. Lock Haven Univ. of Pa.*, No. 4:13-cv-00523, 2014 WL 3508257, at *8 (M.D. Pa. July 14, 2014). Under those state relation-back rules, it appears that Buehl's introduction of his federal § 1983 cause of action in the second

---

[1] The medical defendants also argue that Count V, asserting a parallel deliberate indifference claim under the Pennsylvania state constitution, is time-barred. In light of our recommendation that this Court decline to exercise supplemental jurisdiction over Buehl's state-law claims, and that this action be remanded to the state courts for further proceedings, we have omitted reference to Count V in this discussion of Buehl's federal claims under Count I.

amended complaint, filed in the state court in April 2016, would relate back to his original complaint, filed in June 2015, and his amended complaint, filed in November 2015. Although the earlier versions of the complaint did not expressly reference § 1983 or any federal constitutional rights, they alleged the very same conduct that formed the basis of the second amended complaint, and they expressly alleged the defendants' deliberate indifference to Buehl's serious medical needs, albeit in violation of the Pennsylvania state constitution's prohibition against cruel and unusual punishment. The facts pled in the original and amended complaint were sufficient to implicate Buehl's federal rights guaranteed under the Eighth Amendment to the United States Constitution. *See Heinly v. Commonwealth*, 621 A.2d 1212, 1217 (Pa. Commw. Ct. 1993).[2]

---

[2] We note that the facts of this case are materially different from those of *Valentine*, which involved claims against newly added parties not named in an earlier, timely complaint, as well as the other cases cited therein. *See Valentine*, 2014 WL 3508257, at *11; *see also Burger v. Borough of Ingram*, 697 A.2d 1037, 1041–42 (Pa. Commw. Ct. 1997) (distinguishing § 1983 claims against newly added individual defendants from timely § 1983 claims against their municipal employer); *Davis v. City of Philadelphia*, 650 A.2d 1127, 1130 (Pa. Commw. Ct. 1994) (distinguishing newly added § 1983 claim from timely ordinary negligence claim); *Frey v. Pa. Elec. Co.*, 607 A.2d 796, 798 (Pa. Super. Ct. 1992) (distinguishing newly added survival claim from timely wrongful death claim). Claims against newly added defendants Wexford and Correct Care

*(continued on next page)*

Moreover, none of the conduct by Harewood and Pandya occurred more than two years prior to the second amended complaint's date of filing. The second amended complaint was filed on April 19, 2016; it had previously been tendered for filing along with a motion for leave to amend on March 21, 2016. Buehl was transferred to SCI Frackville, where Harewood served as medical director, on April 14, 2014. Buehl first presented for sick call at SCI Frackville on April 15, 2014. He was first seen by a physician at SCI Frackville on April 25, 2014. All of the alleged conduct by Harwood—who repeatedly denied Buehl's requests to authorize the prescription of tramadol to treat his shoulder pain—occurred between May 2014 and September 2014, when he was replaced as medical director by Pandya. Similarly, all conduct by Pandya is alleged to have occurred in and after September 2014.

Accordingly, the plaintiff's § 1983 claims against Harewood and Pandya, asserted in Count I of the second amended complaint, are not barred by the statute of limitations.

---

may not relate back under Pennsylvania's relation-back rules, but the defendants have not raised this affirmative defense with respect to those particular defendants.

## 2. *Doctors Harewood and Pandya*

Buehl contends that physicians Harewood and Pandya, each of whom served as medical director at SCI Frackville, were deliberately indifferent to his serious medical needs.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To prevail on an Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and (2) "a sufficiently culpable state of mind" of the defendant official. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). There are different standards for Eighth Amendment violations depending on the type of claim. An Eighth Amendment challenge to prison conditions such as this is subject to the deliberate indifference standard. *See id.* at 835–36. Prison officials are deliberately indifferent when they know of and disregard a substantial risk of harm to a prisoner. *Id.* at 836. Moreover, a prisoner must produce evidence of serious or significant

physical or emotional injury resulting from the challenged prison condition. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

> To be liable on a deliberate indifference claim, a defendant prison official must both "know[] of and disregard[] an excessive risk to inmate health or safety." The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware. However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (quoting and citing *Farmer*, 511 U.S. at 837–38, 842, 844) (citations omitted) (alterations in original).

To state a cognizable Eighth Amendment claim for improper medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it

requires the prisoner's medical needs to be serious." *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978).

With respect to the serious medical need prong of the *Estelle* standard, a serious medical need exists if failure to treat such condition would constitute a "denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 825.

> [T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences. The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."

*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

With respect to the deliberate indifference prong of the *Estelle* standard, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients. *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). "[M]ere allegations of malpractice do not raise issues of constitutional import." *Monmouth Cty.*

*Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). A mere difference of opinion between the prison medical staff and the inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *Id.* at 346; *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Moreover, a prison doctor's use of a different treatment regimen than that prescribed by a private physician does not amount to deliberate indifference. *Johnson v. Cash*, 557 Fed. App'x 102, 104 (3d Cir. 2013) (per curiam) (citing *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977)). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). The key question is whether the defendant provided the inmate with some type of treatment, regardless of whether it is what the plaintiff desires. *Farmer*, 685 F. Supp. at 1339. The complaint must allege that the defendant "knows of the prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment." *Lopez v.*

*Corr. Med. Servs., Inc.*, 499 Fed. App'x 142, 146 (3d Cir. 2012).

Here, Buehl's § 1983 claim relies on his examination by a consulting orthopedist in March and June 2014. The consulting orthopedist opined that the preferred treatment for Buehl's condition, in light of his incarceration, was the prescription of tramadol and steroids to alleviate pain and swelling.[3] Notwithstanding this treatment opinion by the consulting orthopedist, Harewood denied Buehl's request for the prescription of tramadol. Instead Buehl was given ibuprofen and intermittent courses of steroids, and Harewood referred him for an orthopedic surgery consultation. After succeeding Harewood, Pandya continued Buehl on ibuprofen and intermittent steroids. Buehl does not allege that he was denied treatment altogether for his shoulder pain, but merely that he did not receive the treatment that he desired, or that was recommended by a consulting physician. He has failed to allege anything more than a difference of professional opinion between his prison doctors and a consulting physician with respect to the preferred course of treatment for his shoulder pain.

---

[3] The orthopedist allegedly advised Buehl that shoulder-replacement surgery might be preferred ordinarily, but he was not comfortable performing surgery on a prison inmate.

Accordingly, it is recommended that Count I of the second amended complaint, brought under 42 U.S.C. § 1983 and alleging deliberate indifference by the defendants in violation of the plaintiff's Eighth Amendment rights, be dismissed as against Hareford and Pandya for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

### 3. Director Oppman

Buehl contends that Oppman, Director of the Bureau of Healthcare Services for the DOC, was deliberately indifferent to his serious medical needs.

It is well established that "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). "A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Typically, personal involvement may be established

through: (1) personal direction or actual participation by the defendant in the misconduct; or (2) knowledge of and acquiescence in the misconduct. *Id.* The plaintiff does not contend that Oppman personally directed or actually participated in his medical treatment, nor does he contend that Oppman knew of and acquiesced in the treatment decisions by Harewood and Pandya.

Alternatively, § 1983 liability may result if a supervising defendant caused a subordinate to violate another's constitutional rights through the execution of an official policy or settled informal custom. *See Sample v. Diecks*, 885 F.2d 1099, 1117–18 (3d Cir. 1989).

> [T]o hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.

*Beers-Capitol*, 256 F.3d at 134 (citing *Sample*, 885 F.2d at 1118).

With respect to supervisory liability for Oppman, the policy identified by the plaintiff is a set of "clinical guidelines" promulgated sometime in 2013. These DOC-wide "clinical guidelines" required prescriptions for more

powerful painkillers to be reviewed and approved by a regional medical director. But the second amended complaint fails to allege any causal link between the policy and Buehl's injury. As alleged, the policy did not impose a blanket prohibition on the prescription of tramadol and other powerful painkillers, but merely elevated approval authority for such medications to the regional medical director level, and the second amended complaint fails to allege that a regional medical director denied a request by Harewood or Pandya for approval to treat Buehl with tramadol. Moreover, it fails to allege any facts to suggest that Oppman was aware that any unreasonable risk was created by the policy, or that he was indifferent to that risk, such as it might be.

Accordingly, it is recommended that Count I of the second amended complaint, brought under 42 U.S.C. § 1983 and alleging deliberate indifference by the defendants in violation of the plaintiff's Eighth Amendment rights, be dismissed as against Oppman for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 4. Nurses Kuras and Stanishefski

Buehl contends that Nurse Kuras, a registered nurse supervisor at

SCI Frackville, and Nurse Stanishefski, healthcare administrator at SCI Frackville, were deliberately indifferent to his serious medical needs.

Correctional health care administrators and nurse supervisors are considered non-medical prison officials in the context of a §1983 denial of medical care claim. *Culver v.* Specter, 2014 WL 4187674, at \*1 (M.D. Pa. Aug. 22, 2014); *Thomas v. Zinkel*, 155 F. Supp. 2d 408, 413 (E.D. Pa. 2001). Non-medical prison officials typically cannot be found deliberately indifferent under the Eighth Amendment if they fail to respond to the medical needs of an inmate already being treated by prison medical authorities, or if, as non-physicians, they defer to the medical judgment of the inmate's treating medical staff. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). "[A]bsent reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* No such knowledge or reason to believe is alleged in the second amended

complaint. Moreover, as discussed above, the facts alleged in the second amended complaint articulate nothing more than a difference of professional opinion between Buehl's prison doctors and a consulting physician with respect to the preferred course of treatment for his shoulder pain.

Accordingly, it is recommended that Count I of the second amended complaint, brought under 42 U.S.C. § 1983 and alleging deliberate indifference by the defendants in violation of the plaintiff's Eighth Amendment rights, be dismissed as against Kuras and Stanishefski for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 5. Corporate Defendants Wexford and Correct Care

Although the original, amended, and second amended complaints all name the same five individual defendants—Oppman, Harewood, Pandya, Stanishefski, and Kuras—the second amended complaint included two newly added corporate defendants: Wexford Health Sources, Inc. ("Wexford") and Correct Care Solution, LLC ("Correct Care"). Wexford and Correct Care are private corporations that contracted with the DOC to provide medical care to inmates at SCI Frackville and SCI Mahanoy

during the relevant time period. Harewood is alleged to have been an employee of Wexford. Pandya is alleged to have been an employee of Correct Care. The plaintiff appears to seek to hold these two corporate defendants vicariously liable for the conduct of their employees with respect to his medical treatment.

"[A]lthough a private corporation offering medical services cannot be held liable for an alleged § 1983 violation under a theory of *respondeat superior*, it can be held liable for a policy or custom that demonstrates deliberate indifference." *Francis v. Carroll*, 659 F. Supp. 2d 619, 625–26 (D. Del. 2009) (internal quotation marks omitted). *See generally Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (applying *Monell* to a private company providing medical services to inmates). Thus, to prevail on his § 1983 claims against Wexford or Correct Care, the plaintiff must establish that there was a relevant Wexford or Correct Care policy or custom, and that this policy or custom caused the constitutional violation for which she seeks relief. *See Natale*, 318 F.3d at 583–84. But the second amended complaint fails to allege any

such corporate policy or custom with respect to Wexford or Correct Care. Indeed, other than alleging that Wexford and Correct Care employed Harewood and Pandya, respectively, the facts alleged in support of Buehl's § 1983 claims contain no reference whatsoever to these corporate entities.[4]

Accordingly, it is recommended that Count I of the second amended complaint, brought under 42 U.S.C. § 1983 and alleging deliberate indifference by the defendants in violation of the plaintiff's Eighth Amendment rights, be dismissed as against Wexford and Correct Care for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

## B. Counts II, III, IV, and V: State-Law Claims

In Counts II, III, IV, and V, Buehl has asserted state-law causes of action. But where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach*

---

[4] The prayer for relief for Buehl's state-law medical negligence claims (Count II) includes references to Wexford and Correct Care, but neither company is mentioned in any of the other counts of the complaint, including the prayer for relief for Buehl's federal § 1983 claims (Count I).

*v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state-law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. Therefore, it is recommended that Buehl's state-law claims (Counts II, III, IV, and V) be remanded to the Court of Common Pleas of Schuylkill County, Pennsylvania, for further proceedings on the surviving state-law claims. *See Cohill*, 484 U.S. at 357.

## V.  RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.   The medical defendants' motion to dismiss (Doc. 3) be **GRANTED in part and DENIED in part**;

2.   The corrections defendants' motion to dismiss (Doc. 5) be **GRANTED in part and DENIED in part**;

3.    Count I of the second amended complaint (Doc. 1-1) asserting federal civil rights claims pursuant to 42 U.S.C. § 1983 be **DISMISSED** against all defendants for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1), 42 U.S.C. § 1997e(c)(1), and Fed. R. Civ. P. 12(b)(6);

4.    The Court decline to exercise supplemental jurisdiction over Counts II, III, IV, and V of the second amended complaint (Doc. 1-1) asserting state-law claims, pursuant to 28 U.S.C. § 1367(c)(3); and

5.    This action be **REMANDED** to the Court of Common Pleas of Schuylkill County, Pennsylvania, for further proceedings, pursuant to the Court's inherent authority to remand supplemental claims, *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

Dated: November 18, 2016              ***s/ Joseph F. Saporito, Jr.***
                                      JOSEPH F. SAPORITO, JR.
                                      United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ROGER BUEHL,

     Plaintiff,

     v.

WEXFORD HEALTH SOURCES,
INC., et al.,

     Defendants.

CIVIL ACTION NO. 3:16-cv-00822

(CAPUTO, J.)
(SAPORITO, M.J.)

## <u>NOTICE</u>

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated November 18, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: November 18, 2016          ***s/ Joseph F. Saporito, Jr.***
                                  JOSEPH F. SAPORITO, JR.
                                  United States Magistrate Judge