**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROGER BUEHL,<br><br>    Plaintiff,<br><br>    v.<br><br>WEXFORD HEALTH SOURCES, INC., et al.,<br><br>    Defendants. | CIVIL ACTION NO. 3:16-cv-00822<br><br>(JUDGE CAPUTO)<br><br>(MAGISTRATE JUDGE SAPORITO) |

**MEMORANDUM**

Presently before the Court is the Report & Recommendation of Magistrate Judge Saporito (Doc. 10) to a Partial Motion to Dismiss (Doc. 3) filed by Defendants Correct Care Solutions, LLC, Wexford Health Sources, Inc., Dr. Adrian Harewood, and Dr. Haresh Pandya (the "Medical Defendants"), and a Motion to Dismiss (Doc. 5) filed by Defendants Christopher Oppman, Vicki Stanishefski, R.N., and Mary Alice Kuras, R.N. (the "Corrections Defendants"). Plaintiff Roger Buehl brings this action pursuant to, *inter alia*, 42 U.S.C. § 1983 for a violation of his rights under the Eighth Amendment to the United States Constitution. The Medical Defendants seek dismissal of Counts I and V of Plaintiff's Second Amended Complaint ("SAC") (Doc. 1-1) for failure to state a claim. The Corrections Defendants seek dismissal of all Counts for failure to state a claim. Magistrate Judge Saporito recommended that Count I of Plaintiff's SAC, which raises Plaintiff's only federal-law claim, be dismissed against all Defendants for failure to state a claim, and that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims raised in Counts II-V. For the reasons that follow, the Magistrate Judge's Report and Recommendation will be adopted in part and rejected in part.

**I. Background**

The facts as stated in Plaintiff's SAC (Doc. 1-1) can be summarized as follows:

Plaintiff Roger Buehl has been an inmate under the continuous care, custody, and control of the Pennsylvania Department of Corrections ("DOC") since 1983. (SAC ¶ 10.) Healthcare staff at SCI Smithfield, SCI Mahanoy, and SCI Frackville have been responsible for Buehl's healthcare from June 2007 to date. (*Id.*) Buehl began experiencing pain and losses of both strength and range of motion in his right shoulder prior to 2009. (*Id.* ¶ 11.) In 2009, Buehl was diagnosed by DOC healthcare staff with rotator cuff tendinitis in his right shoulder. (*Id.* ¶ 12.) DOC healthcare staff began treating Buehl with ibuprofen and both oral and injected steroids. (*Id.*) In late 2009, Buehl was hospitalized for failure of renal function. (*Id.* ¶ 13.) By early 2010, routine blood lab results suggested that Buehl's loss of renal function was attributable to long-term use of ibuprofen and other non-steroidal anti-inflammatory medicines. (*Id.* ¶ 14.) The DOC healthcare staff explored various alternative medications for treating Buehl's shoulder pain, and by mid-2011 Buehl was receiving Neurontin, both oral and injected steroids, and low-dose ibuprofen. (*Id.* ¶¶ 15-16.) However, in early 2012 Buehl began experiencing increases in the severity of pain and greater losses of strength and range of motion in his right shoulder. (*Id.* ¶ 17.) In March 2012, after performing an x-ray on his shoulder, the DOC healthcare staff diagnosed Buehl with glenohumeral degenerative joint disease. (*Id.* ¶ 18.)

In late 2012 or early 2013, DOC healthcare staff began treating Buehl with tramadol, a non-narcotic opioid, along with Neurontin, oral and injected steroids, and low-dose ibuprofen. (*Id.* ¶ 19.) On July 26, 2013, another x-ray of Buehl's shoulder confirmed that he had moderate degenerative joint disease of the right shoulder. (*Id.* ¶ 23.) DOC healthcare staff changed Buehl's medications, and prescribed Tylenol with Codeine No. 3 instead of tramadol. (*Id.* ¶ 24.) Buehl informed DOC healthcare staff that he did not want the acetaminophen or narcotic in the Tylenol, and instead preferred tramadol for managing his pain. (*Id.*) At that time, the staff advised Buehl that a regional medical director imposed new

restrictions on tramadol prescriptions. (*Id.*) Through early 2014, DOC healthcare staff prescribed Tylenol with Codeine No. 3 or oxycodone, along with Neurontin, ibuprofen, and occasionally steroids to treat Buehl's shoulder pain. (*Id.* ¶ 25.) Buehl was eventually prescribed hydrocodone and then, at Buehl's request, he was provided tramadol again. (*Id.*)

Sometime in 2013, Defendant Christopher Oppman, in his capacity as Director of the Bureau of Healthcare Services, approved and implemented clinical practice or pharmaceutical guidelines (the "Guidelines"), which applied to most pain medications that could be prescribed for inmates and effectively curtailed the authority of DOC healthcare staff to exercise their independent professional judgment in prescribing pain medications. (*Id.* ¶¶ 26-27, 78.)

On January 30, 2014, Dr. Lisiak noted that Buehl was "recently changed from oxycodone to Norco" and that Buehl claimed the Norco was "not effective in relieving his pain." (*Id.* ¶ 29.) Dr. Lisiak also noted that Buehl had been "changed to Ultram [tramadol] and Neurontin (as was effective in the past)," but that Buehl claimed that this regimen was "not effective in relieving pain, [and was] asking about oxycodone." (*Id.*) Dr. Lisiak requested Buehl be evaluated by the regional medical director. (*Id.*)

On February 5, 2014, Buehl was examined by Dr. Anthony Chiavacci, Wexford's Regional Medical Director, regarding Buehl's request to alter his medications. (*Id.* ¶ 30.) Buehl requested to have his tramadol dosage increased. (*Id.* ¶ 31.) However, Dr. Chiavacci instead "planned to discontinue" Buehl's tramadol treatment, tapered off his Nuerontin, and placed Buehl on Motrin 600 mg three times a day. (*Id.*) Buehl's prescriptions for tramadol and Nuerontin were reduced and then terminated in early 2014 pursuant to Dr. Chiavacci's orders. (*Id.* ¶ 33.) Subsequently, DOC healthcare staff provided Buehl with ibuprofen and Nortriptyline, a tricyclic antidepressant, which were ineffective in treating his shoulder pain. (*Id.*)

3

In February 2014, Dr. Chiavacci approved an orthopedic consult for Buehl. (*Id.* ¶ 34.) On March 21, 2014, Dr. Thomas Martin, an orthopedist, examined Buehl. (*Id.* ¶ 35.) After conducting several x-rays, Dr. Martin diagnosed Buehl with advanced glenohumeral osteoarthritis, complete erosion of the cartilage, and development of at least one humeral head spur in Buehl's right shoulder. (*Id.*) According to Dr. Martin, the only option for treatment of the underlying condition was a total shoulder replacement. (*Id.*) In the alternative, Dr. Martin recommended tramadol and intermittent courses of steroids for treatment of the pain. (*Id.*) On April 3, 2014, Buehl saw Nelson Iannuzzi, CRNP, and noted that he was still experiencing severe right shoulder pain, but wanted to defer surgery as long as possible. (*Id.* ¶ 37.) Iannuzzi noted a treatment plan that decreased Buehl to 400mg of Motrin three times a day and provided Nortriptyline. (*Id.* ¶ 38.) Five days later, Buehl went to the MD line at SCI Mahanoy and saw Dr. Lisiak, who continued Buehl's current medication, Motrin, and directed him to follow up in one to two weeks. (*Id.* ¶¶ 39-41.)

On April 14, 2014, Buehl was transferred from SCI Mahanoy to SCI Frackville. (*Id.* ¶ 42.) Beginning in May 2014, Buehl repeatedly asked Defendant Dr. Harewood to prescribe him tramadol, as recommended by the orthopedist, or any other more effective medicine to treat his shoulder pain. (*Id.* ¶ 47.) However, Dr. Harewood provided Buehl with only ibuprofen and "one short course of steroids." (*Id.*) On May 23, 2014, Buehl was evaluated by a physical therapist, after which Dr. Harewood assessed that Buehl had "frozen shoulder" and noted that the physical therapist recommended "surgical intervention/evaluation." (*Id.* ¶ 48.) Dr. Harewood accordingly proposed a consultation for orthopedic surgery, which was approved. (*Id.*)

On June 5, 2014, Buehl saw Dr. Harewood again and requested tramadol for pain. (*Id.* ¶ 49.) Dr. Harewood planned for Buehl to follow-up with the orthopedic department, recommended he continue with his current medications, and noted there was "[n]o need for

narcotic medications." (*Id.*)

On June 13, 2014, Dr. Martin performed an orthopedic evaluation of Buehl and noted that Buehl had "pretty significant glenohumeral arthritis." (*Id.* ¶ 50.) Dr. Martin spoke with Buehl about the prospect of a shoulder replacement, to which Buehl expressed "appropriate reservations." (*Id.* ¶ 51.) Dr. Martin noted that Buehl was "not an ideal candidate" for a shoulder replacement, and stated that he thought Buehl "would be better treated with Tramadol." (*Id.*) Dr. Martin also stated that Buehl's diagnosis "[w]arrant[ed] this level of pain medicine." (*Id.*)

On July 1, 2014, Dr. Harewood declined to prescribe Buehl with tramadol and instead planned to continue Buehl on Motrin and prescribed Buehl with "Prednisone (steroid) 60 mg daily for 5 days." (*Id.* ¶ 52.) When Buehl pointed out that ibuprofen had caused renal insufficiency problems in the past, and that his renal function should be monitored by diagnostic testing, Dr. Harewood terminated all medications and treatment. (*Id.* ¶ 53.)

On July 10, 2014, Dr. Harewood saw Buehl who again requested Ultram (tramadol) for his shoulder pain. (*Id.* ¶ 54.) Dr. Harewood denied Buehl's request, and instead told Buehl to ". . . take over the counter pain medications as needed" and "[r]ecommended exercise and strengthening." (*Id.*)

Beginning in September 2014, Buehl repeatedly asked Defendant Dr. Pandya to prescribe tramadol or any other more effective medicine to treat his shoulder pain.[1] (*Id.* ¶ 55.) Buehl informed Dr. Pandya that the medicines currently provided were not helpful in managing his pain. (*Id.*) However, Dr. Pandya did not provide anything to treat Buehl's pain other than ibuprofen or acetaminophen. (*Id.*)

On December 2, 2014, labs were taken which revealed that Buehl had ". . .

---

[1] Dr. Pandya succeeded Dr. Harewood as Medical Director on September 1, 2014. (Compl. ¶ 5-6, 55; R&R 16, 21.)

5

decreased kidney function probably related to his prolonged use of Motrin." (*Id.* ¶ 57.) The labs specifically revealed that Buehl had "[i]ncreased BUN (blood urea nitrogen) and serum Creatinine," as well as "[d]ecreased GFR (glomerular filtration rate)." (*Id.*) On December 30, 2014, additional labs were conducted which revealed Buehl had "[i]ncreased BUN, serum Creatinine, and deceased GFR." (*Id.* ¶ 58.)

On January 9, 2015, Dr. Pandya examined Buehl again, at which time Buehl gave Dr. Pandya a copy of the orthopedist report and requested effective treatment for his shoulder pain. (*Id.* ¶ 59.) Dr. Pandya read the record, and confirmed the presence of those records in Buehl's medical file. (*Id.*) Dr. Pandya then informed Buehl that the orthopedist recommendations were appropriate, but that the Guidelines precluded him from prescribing tramadol or any similar medication to treat Buehl's pain. (*Id.*) Dr. Pandya once again prescribed ibuprofen and acetaminophen on a long-term basis. (*Id.* ¶¶ 59-60.)

Beginning in May 2014, Buehl repeatedly submitted written Request to Staff communications to Defendant Stanishefski, RN and Healthcare Administrator at SCI Frackville, in which Buehl asked Defendant Stanishefski to review his pain treatment, refer him to another physician, and require DOC healthcare staff to provide him with treatment consistent with community standards of care. (*Id.* ¶¶ 7, 63, 75.) Defendant Kuras, RN and Registered Nurse Supervisor at SCI Frackville, provided written responses to each written request that Buehl addressed to Defendant Stanishefski, and those responses typically instructed Buehl to "sign up for sick call," file an official inmate grievance, or otherwise indicated that no remedial action would be taken. (*Id.* ¶¶ 8, 64, 76.)

Between May 2014 and December 2014, numerous communications about Buehl's shoulder condition and related medical treatment were directed to Defendant Oppman's attention. (*Id.* ¶¶ 81, 83.) Each communication requested review and remedial action to ensure Buehl was provided with medical treatment and pain management consistent with

the community standard of care. (*Id.* ¶ 82.) Defendant Oppman provided responses on several occasions, in which he approved of the treatment that was being provided to Buehl and upheld the provider physicians' deference to, and application of, the Guidelines. (*Id.* ¶ 83.)

## II. Legal Standard

### A. Reviewing a Report & Recommendation

When objections to the Magistrate Judge's Report are filed, the court must conduct a *de novo* review of the contested portions of the Report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)). However, this only applies to the extent that a party's objections are both timely and specific; if objections are merely "general in nature," the court "need not conduct a *de novo* determination." *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984). Indeed, the Third Circuit has instructed that "providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Id.* at 7. In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).

Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa.1994). Uncontested portions of the Report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998). Therefore, the Court reviews the portions of the Report

& Recommendation to which the petitioner objects specifically *de novo*. The remainder of the Report & Recommendation, and any portion the petitioner objects to generally, is reviewed for clear error.

**B. 12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts:  (1)

identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

On November 18, 2016, Magistrate Judge Saporito issued the instant Report and Recommendation ("R&R"), recommending Defendants' Motions be granted in part and denied in part. Specifically, the Magistrate Judge recommended that the Court dismiss Count I of Plaintiff's SAC, which asserts a violation of the Eighth Amendment against Defendants Dr. Harewood, Dr. Pandya, Oppman, Stanishefski, and Kuras, decline to exercise supplemental jurisdiction over the state-law claims contained in Counts II-V, and remand this action back to the Court of Common Pleas of Schuykill County for further proceedings. (R&R at 29-30, Doc. 10.)

On December 2, 2016, Buehl raised four objections in response to the R&R. (Doc. 11.) First, Buehl argues that the Magistrate Judge erred in finding that the SAC fails to allege facts supporting an Eighth Amendment claim against Defendants Dr. Harewood and Dr. Pandya. Second, Buehl objects to the Magistrate Judge's conclusion that the SAC fails to allege facts supporting an Eighth Amendment claim against Defendant Oppman. Third, Buehl claims the Magistrate Judge erred in finding that the SAC fails to allege that Defendants Stanishefski and Kuras had the requisite knowledge that Buehl was being denied appropriate medical care. Finally, Buehl's fourth objection seeks to clarify that Buehl did not allege a § 1983 claim against Defendant Wexford Health Sources, Inc. or Defendant Correct Care Solution, LLC. The Corrections Defendants filed a brief in opposition to Buehl's objections on December 16, 2016 (Doc. 12), and the matter is now ripe for disposition.

After reviewing Buehl's specific objections to the R&R *de novo* and the remainder for clear error or manifest injustice, the R&R will be adopted in part and rejected in part.

**A.     Defendants Dr. Harewood and Dr. Pandya**

The Magistrate Judge concluded that Buehl failed to state a claim upon which relief can be granted with respect to his Eighth Amendment claim against Defendants

Dr. Harewood and Dr. Pandya.[2] (R&R 17-22.) According to the Magistrate Judge, Buehl's federal-law claim against these two Defendants should be dismissed because the SAC fails to allege facts evincing deliberate indifference. (*Id.* at 21 ("[Buehl] has failed to allege anything more than a difference of a professional opinion between his prison doctors and a consulting physician with respect to the preferred course of treatment for his shoulder pain.").) Buehl objects to this conclusion, and asserts that the Defendants acted with deliberate indifference "when they intentionally denied Mr. Buehl a reasonable request for tramadol; when they persisted in treating Mr. Buehl with ibuprofen while knowing that their approach was not controlling Mr. Buehl's pain but was causing permanent injury; [and] when they . . . refused to provide [tramadol] for a non-medical reason." (Objections 9, Doc. 11.) Buehl primarily argues that the Magistrate Judge overlooked the fact that the Defendants' decisions to prescribe Buehl with ibuprofen on a long-term basis, despite being aware of his history of renal insufficiency, states a claim of deliberate indifference. (*Id.*)

In order to state a claim for a violation of the Eighth Amendment based on improper medical care, Buehl must allege (1) Defendants were deliberately indifferent to his medical needs, and (2) those medical needs were serious. *See James v. Pa. Dep't of Corr.*, 230 Fed. Appx. 195, 197 (3d Cir. 2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).

---

[2] The Magistrate Judge dismissed Buehl's § 1983 claim against Dr. Harewood and Dr. Pandya pursuant to the screening provisions of 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c)(1). *See also Onapolis v. Lamanna*, 70 F. Supp. 2d 809, 814 (N.D. Ohio 1999) (noting that, under 28 U.S.C. § 1915A, "district courts are required to screen all civil cases brought by prisoners" and "should sua sponte dismiss the complaint" if it, *inter alia*, fails to state a claim upon which relief may be granted); *Jae v. Stickman*, No. 12-1332, 2012 WL 5830633, at *1 n.2 (W.D. Pa. Nov. 16, 2012) ("Section 1997e(c)(1) permits a court to sua sponte dismiss any action with respect to prison conditions under 42 U.S.C. § 1983, or any other Federal law, by a prisoner if the court finds that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.").

A medical need is "serious" if a plaintiff demonstrates that the need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted).

To be deliberately indifferent, Defendants must have both known of and disregarded an excessive risk to Buehl's health or safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Id.* (citing *Farmer*, 511 U.S. at 837-38). But Defendants' subjective knowledge can be proved by circumstantial evidence which demonstrates "that the excessive risk was so obvious that [Defendants] must have known of the risk." *Id.* (citing *Farmer*, 511 U.S. at 842). Of course, "medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner . . . do not constitute deliberate indifference to serious medical needs." *Lopez v. Corr. Med. Servs., Inc.*, 499 Fed. Appx. 142, 146 (3d Cir. 2012) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)). Additionally, Defendants' use of a different treatment regimen than that prescribed by a private physician does not amount to deliberate indifference for purposes of the Eighth Amendment. *Johnson v. Cash*, 557 Fed. Appx. 102, 104 (3d Cir. 2013) (citing *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977)). The Third Circuit has "found deliberate indifference to a prisoner's serious medical needs only where a prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment." *Lopez*, 499 Fed. Appx. at 146 (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Turning to Buehl's objections, the Court finds that the allegations in the SAC, construed in a light most favorable to Buehl, satisfy the deliberate indifference standard

for an Eighth Amendment claim against Defendant Dr. Pandya only. As is relevant to the instant Defendants, Buehl alleges that (1) he was hospitalized for failure of renal function in 2009; (2) routine diagnostic blood lab testing conducted in early 2010 indicated Buehl had continued problems with his renal functions attributable to long-term use of ibuprofen and other non-steroidal anti-inflammatory medicines; (3) he was diagnosed with advanced glenohumeral osteoarthritis, complete erosion of the cartilage, and development of at least one humeral head spur in his right shoulder in March 2014[3]; (4) Dr. Martin recommended tramadol to treat Buehl's shoulder pain in June 2014, and opined that Buehl's condition "[w]arrant[ed] this level of pain medicine"; (5) neither Dr. Harewood nor Dr. Pandya provided Buehl with tramadol despite being aware of Dr. Martin's recommendation; (6) Buehl continued to experience severe pain in his shoulder under the treatment regimens recommended by Dr. Harewood and Dr. Pandya; and (7) labs taken in December 2014 revealed that Buehl had decreased kidney function, which was "probably related to his prolonged use of Motrin."

1. **Buehl Fails to State an Eighth Amendment Claim Against Dr. Harewood**

Buehl fails to allege that Dr. Harewood acted with deliberate indifference because there is no plausible claim that Dr. Harewood consciously disregarded an excessive risk to Buehl's serious medical needs. The SAC alleges that Buehl was already on a regular Motrin and Nortriptyline regimen when he arrived at SCI Frackville on April 14, 2014. (SAC ¶ 45.) Dr. Harewood continued Buehl on his current medications while Buehl was being examined by a physical therapist and an orthopedist. When Buehl informed Dr. Harewood that ibuprofen had caused renal insufficiency problems in the past, Dr. Harewood immediately terminated Buehl's treatment regimen consisting of daily ibuprofen and recommended over the counter pain medications on an as-needed basis,

---

[3] No party has disputed that either Buehl's shoulder condition or renal insufficiency constitutes a serious medical need.

as well as exercise and strengthening. Based on these allegations, there is no plausible claim that Dr. Harewood consciously disregarded a "substantial risk of serious harm" to Buehl's kidney health due to persistent use of ibuprofen. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *see Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) ("[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."). To the contrary, the allegations in the SAC demonstrate that once Dr. Harewood became aware of the potential for that harm, he took reasonable steps in terminating the daily Motrin regimen.

Moreover, the fact that Dr. Harewood prescribed "over the counter pain medications as needed" and "exercise and strengthening," rather than tramadol or other pain medication, without more, does not allege deliberate indifference. As a general rule, a prison doctor's use of a different treatment regimen than that recommended by a private physician does not amount to deliberate indifference, regardless of whether the prisoner believes that the care he received was adequate. *See Johnson v. Cash*, 557 Fed. Appx. 102, 104 (3d Cir. 2013); *Nesmith v. S. Health Partners*, No. 11-425, 2012 WL 426606, at *4 (W.D. Pa. Jan. 10, 2012).

Nevertheless, courts have found plausible claims of deliberate indifference when a prisoner alleges that the provision of medical care was both inadequate and motivated by improper or non-medical reasons. *See Robinson v. Corizon Health, Inc.*, No. 12-1271, 2016 WL 7235314, at *7 (E.D. Pa. Dec. 13, 2016). However, even if Dr. Harewood provided inadequate care, Buehl fails to plausibly allege that Dr. Harewood acted upon an improper motive in either declining to prescribe Buehl with his preferred treatment or in recommending exercise and OTC pain medicines as needed after discontinuing Buehl's daily Motrin regimen in light of his renal insufficiency concerns. *Cf. Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (explaining that a prison doctor's failure to provide adequate medical care is cognizable under the Eighth Amendment only if it "was deliberate, and motivated by non-medical factors" such as cost-savings, rather than as "a result of an error in medical judgment"); *Robinson*, 2016 WL 7235314,

at *7-*8 (denying motion to dismiss plaintiff's Eighth Amendment claim when the complaint alleged defendants' actions were "motivated in part by financial considerations and by a plan to hasten the deaths of prisoners with life sentences"); *Shultz v. Allegheny Cty.*, 835 F. Supp. 2d 14, 23 (W.D. Pa. 2011) (denying a motion to dismiss when plaintiff plausibly alleged that inadequate care was provided due to a "cost-cutting/saving policy or practice"). The only conceivable "improper" consideration raised in the SAC is that the Guidelines somehow prevented or deterred Dr. Harewood from prescribing Buehl with tramadol or other powerful pain medicines. But Buehl never plausibly alleged that Dr. Harewood's medical decisions were affected by the Guidelines–improperly or otherwise. Instead, the facts as alleged show that Dr. Harewood initially continued Buehl on his already-prescribed regimen of Motrin and Nortriptyline upon his transfer to SCI Frackville in April 2014 (SAC ¶¶ 38-47); prescribed Buehl with a course of steroids in May 2014 that were temporarily effective (*id.* ¶ 47); sent Buehl for an evaluation by both a physical therapist and an orthopedist in May and June of 2014 (*id.* ¶ 48-50); concluded that there was "[n]o need" for tramadol or any "narcotic medications" in June 2014 (*id.* ¶ 49); planned to prescribe Buehl with Prednisone in response to his complaints on July 1, 2014 (*id.* ¶ 52); and, upon learning of Buehl's history of renal insufficiency problems caused by ibuprofen, terminated Buehl's treatment regimen and recommended OTC pain medicines as needed and strength and exercise on July 10, 2014 (*id.* ¶¶ 53-54.) These allegations do not give rise to a plausible claim of deliberate indifference.

Accordingly, because Buehl fails to plausibly allege that Dr. Harewood acted with deliberate indifference, the Court will adopt the Magistrate Judge's recommendation and dismiss Count I as to Dr. Harewood.

### 2. Buehl States an Eighth Amendment Claim Against Dr. Pandya

However, with respect to Dr. Pandya, the allegations in the SAC, when viewed in a light most favorable to Buehl, sufficiently state a claim of deliberate indifference. Buehl alleges that Dr. Pandya had Buehl undergo diagnostic blood labs in December 2014, which revealed that Buehl had decreased kidney function "probably related to his

15

prolonged use of Motrin." (SAC ¶ 57.) Despite these results, Dr. Pandya again prescribed Buehl with ibuprofen and acetaminophen on a long-term basis. (*Id.* ¶¶ 59-60.) Dr. Pandya allegedly told Buehl that the Guidelines precluded him from prescribing tramadol or any other similar medicine to treat Buehl's pain. (*Id.* ¶ 59.)

The SAC sufficiently alleges that Dr. Pandya knew that prescribing Buehl with ibuprofen on a long-term basis risked causing him serious permanent injury. But despite being aware of this risk, Dr. Pandya provided Buehl with a potentially harmful treatment regimen, allegedly due in part to the limitations imposed by the Guidelines, which exposed Buehl to suffering and the threat of further injury to his kidneys. There are key distinctions between the allegations concerning Dr. Harewood and Dr. Pandya.

First, Dr. Pandya was aware that Buehl had continued decreased kidney function stemming from long-term ibuprofen use but nevertheless prescribed ibuprofen on a long-term basis, whereas Dr. Harewood terminated Buehl's daily Motrin regimen upon becoming aware of Buehl's renal insufficiency problems. *See Olive v. Wexford Corp.*, 494 Fed. Appx. 671, 672 (7th Cir. 2012) (finding that a district court erred when it "overlooked the principle that a physician who *knows* that a potential treatment will make the prisoner worse off must not rely on that approach. . . . Better no treatment than a harmful one") (emphasis in original) (internal citations omitted). While Buehl fails to sufficiently allege that Dr. Harewood consciously disregarded an excessive risk to Buehl's kidney health, the same cannot be said of Dr. Pandya.

Second, Dr. Pandya's medical decisions were allegedly motivated by his belief that the Guidelines prevented or deterred him from prescribing otherwise "appropriate" pain medications. Drawing all reasonable inferences in favor of Buehl, the SAC plausibly alleges that Dr. Pandya's decision to prescribe ibuprofen and acetaminophen on a long-term basis stemmed from a non-medical consideration, whereas no similar plausible allegation is made with respect to Dr. Harewood. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (noting that employee-defendants could be found deliberately indifferent when their inadequate provision of medical treatment was

due to an institutional policy that constituted a non-medical reason).

Therefore, Buehl's assertion that he was prescribed a treatment regimen which Dr. Pandya knew risked causing Buehl serious potential harm to his kidneys, combined with the allegation that Dr. Pandya made this decision based on a non-medical reason, "'nudge the Eighth Amendment claim across the line between a possible and plausible claim for relief and create a 'reasonably founded hope that the [discovery] process will reveal relevant evidence to support the claim.'" *Robinson*, 2016 WL 7235314, at \*7 (quoting *Shultz*, 835 F. Supp. 2d at 22 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007))). Accordingly, the Court will reject the Magistrate Judge's recommendation with respect to this finding, and Buehl's Eighth Amendment claim against Dr. Pandya will not be dismissed for failure to state a claim.

## B. Defendants Oppman, Kuras, and Stanishefski

The Magistrate Judge granted the Correction Defendants' Motion to Dismiss Count I against Defendants Oppman, Kuras, and Stanishefski for failure to state a claim. (R&R 22-26.) Buehl's objections to these findings in the R&R are an identical copy of the arguments that he raised before the Magistrate Judge. (*Compare* Pl.'s Br. in Opp'n 8-17, Doc. 8, *with* Objections 10-17, Doc. 11.) Because Buehl's objections to these findings are a duplicate of the arguments presented to and considered by the Magistrate Judge, they are not entitled to *de novo* review. *See Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984) (noting that only specific objections to a Magistrate Judge's Report and Recommendation are entitled to *de novo* review); *Martinez v. Astrue*, No. 10-5863, 2011 WL 4974445, at \*3 (E.D. Pa. Oct. 19, 2011) ("[O]bjections which merely rehash arguments presented to and considered by a magistrate judge are not entitled to de novo review."); *Palmer v. Astrue*, No. 09–820, 2010 WL 1254266, at \*2 (E.D. Pa. Mar. 31, 2010) ("If . . . objections to a Report merely reiterate arguments previously raised before a magistrate, de novo review is not required."); *Nghiem v. Kerestes*, No. 08–cv-4224, 2009 WL 960046, at \* 1 n.1 (E.D. Pa. Apr. 3, 2009) (declining to engage in additional review of objections where the objections merely re-articulated all the claims

and theories for relief that were addressed and dismissed by the magistrate judge). As the Court finds no clear error or manifest injustice with the Magistrate Judge's findings with respect to these Defendants, the Court will adopt these portions of the R&R. Accordingly, the Corrections Defendants' Motion to Dismiss Count I as against Defendants Oppman, Kuras, and Stanishefski will be granted.

### C. Defendants Wexford Health Services, Inc. and Correct Care, LLC

Lastly, Buehl asserts in his objections that, although the Magistrate Judge accurately concluded that Buehl failed to allege a § 1983 claim against Defendants Wexford Health Services, Inc. and Correct Care, LLC, the SAC did not assert such a claim against these two Defendants. (Objections 17-18.) Rather, Buehl notes that he asserted only claims for negligence against Defendants Wexford and Correct Care, and consequently the cases cited in the R&R are "not applicable." The Court recognizes that Buehl failed to specifically include either Defendant Wexford or Defendant Correct Care under the heading of any Count in the SAC, which creates confusion as to which claim(s) is being brought against these two Defendants. The Magistrate Judge noted the confusion. (*See* R&R 28 n.4.)

The Court will construe Buehl's objection as conceding that he has failed to state a § 1983 claim against these two Defendants and is proceeding against Wexford and Correct Care only on a theory of negligence. Accordingly, the Court will reject this portion of the R&R as moot.

### D. Buehl's State-Law Claims

Because the Magistrate Judge recommended dismissing Buehl's federal-law claims, the R&R did not address the merits of Buehl's state-law claims and instead recommended that the Court decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). (R&R 28-29.) However, because the Court will not dismiss Buehl's Eighth Amendment claim as to Defendant Dr. Pandya, the Magistrate Judge's basis for declining to exercise supplemental jurisdiction no longer exists. Accordingly, the Court will not adopt this portion of the R&R.

**E.     Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Here, because Buehl may be able to allege facts sufficient to state an Eighth Amendment claim against Defendants Dr. Harewood, Oppman, Kuras, and Stanishefski, the Court will grant leave to amend Count I with respect to these Defendants.

### IV. Conclusion

For the above stated reasons, the Court adopts in part and rejects in part Magistrate Judge Saporito's R&R. Count I of Plaintiff's SAC will be dismissed without prejudice as to Defendants Dr. Harewood, Oppman, Kuras, and Stanishefski. Plaintiff shall have twenty-one (21) days from the date of entry of this Memorandum and accompanying Order to file an amended complaint; otherwise, these claims will be dismissed with prejudice.

Count I of Plaintiff's SAC will not be dismissed as to Defendant Pandya. The Court will reject as moot the R&R's findings with respect to the § 1983 liability of Defendants Wexford Health Sources, Inc. and Correct Care Solution, LLC. The Court will reject the R&R's recommendation to decline to exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(c)(3). The R&R will be adopted in all other respects, and the matter will be recommitted to the Magistrate Judge for further proceedings.

An appropriate order follows.

March 7, 2016   /s/ A. Richard Caputo
Date   A. Richard Caputo
United States District Judge